WALLACE, J.,
dissenting.
Hartford’s blanket application of a one-size-fits-all rule that all compensation will be averaged over twelve months in calculating disability benefits contradicts the plain language of the plan Hartford administers. Because Hartford administers the plan in a way that contradicts the plan’s unambiguous terms, I dissent from the majority’s holding that Hartford did not abuse its discretion in applying its one-size-fits-all rule to Powell’s semi-annual MBO/Key Contributor Bonus.
Lest there be any doubt about whether Powell’s MBO/Key Contributor Bonus was either a semi-annual or annual bonus, the record before us makes clear that it was a semi-annual bonus. In an internal memorandum circulated by Powell’s employer, the company stated that the bonus “covers the period from January 1,1995 — June 30, 1995.” Further, both the subject line of the letter and its first sentence refer to the bonus as the “1H 1995 Key Contributor Bonus.” “1H,” read in context, meant the first half of the year, since the letter also reminds bonus plan participants that they “need to complete [their] 2H '95 goals ... before the end of July.” With it established that all parties to the MBO/Key Contributor Bonus arrangement (including Powell and his employer) intended that the bonus be paid on a semi-annual basis, we turn to the plan itself to see how it deals with such bonuses and then determine whether Hartford’s interpretation of the plan provisions was reasonable. Day v. AT & T Disability Income Plan, 698 F.3d 1091, 1096 (9th Cir.2012), quoting Conkright v. Frommert, 559 U.S. 506, 521, 130 S.Ct. 1640, 176 L.Ed.2d 469 (2010) (“Under the deferential abuse of discretion standard of review, ‘the plan administrator’s interpretation of the plan will not be disturbed if reasonable’ ”). While the abuse of discretion standard is highly deferential, we must be careful to avoid rubber-stamping Hartford’s interpretation. Tapley v. Locals 302 & 612, 728 F.3d 1134, 1140 (9th Cir.2013), quoting Conkright, 559 U.S. at 521, 130 S.Ct. 1640 (“The Court’s review of the [plan administrator’s] interpretation is not without bite ... ‘a deferential standard of review does not mean that the plan administrator will prevail on the merits’ ”).
*675 In determining the plain meaning of plan language, “we ‘apply contract principles derived from state law ... guided by the policies expressed in ERISA and other federal labor laws.’” Dupree v. Holman Prof. Counseling Ctrs., 572 F.3d 1094, 1097 (9th Cir.2009), quoting Gilliam v. Nevada Power Co., 488 F.3d 1189, 1194 (9th Cir.2007). We must “look to the agreement’s language in context and construe each provision in a manner consistent with the whole such that none is rendered nugatory.” Id. “ We will not artificially create ambiguity where none exists.’ ” Id, quoting Evans v. Safeco Ins. Co., 916 F.2d 1437, 1441 (9th Cir.1990).
Applying those principles here, I conclude that Hartford unreasonably interpreted a plan provision requiring it to pay the “rate in effect on [the insured’s] last day” to mean it could divide all forms of compensation by twelve months. At the crux of this case is the definition of a term used in the plan called “Monthly Rate of Basic Earnings.” That term is a key cog in figuring out how much an insured is entitled to. The plan defines “Monthly Rate of Basic Earnings” as an insured’s “regular monthly pay, including bonuses.” The plan also tells us at what point in time of an insured’s employment Hartford is to assess the insured’s earnings by providing that “[i]f you become Disabled, your Monthly Rate of Basic Earnings will be the rate in effect on your last day as an Active Full-time Employee before becoming Disabled.” (emphasis added). The dispute here is not over whether Powell is entitled to have his MBO/Key Contributor Bonus factored into his disability payment; neither party disputes that he is. The dispute here is over how to interpret the phrase “the rate in effect on your last day.” The plan does not define that phrase, so I turn to traditional methods of contract interpretation to ascertain its meaning.
One well-accepted dictionary definition of “rate” is “[t]he relationship by which the amount or number of one thing corresponds proportionally to the amount or number of another, typically stated as a particular numerical amount per unit.” Oxford English Dictionary Online, rate, n. 1 (September 2015), http://www.oed. com/view/Entry/158412?rskey=gev7UJ& result=2&isAdvanced=false. Under that definition, a “rate” consists of at least two parts: (1) an amount, and (2) a unit of measurement. So, for example, if someone asked you “what is your heart rate,” an answer of “70” would be incomplete because there is no unit of measurement. Likewise, with respect to a rate of pay one must determine both the amount of pay and the period of time over which that amount was earned. Applied here, the first part of Powell’s “rate” was the amount of his Key Contributor Bonus, which was $5,964.78. The second part of Powell’s “rate” was the time period over which that amount was earned, which on the “last day” of Powell’s employment was semi-annually (as the company’s letter, discussed above, establishes).
Interpreting the phrase “the rate in effect on your last day” in this way is buttressed by comparing the language to other plan provisions. The phrase at issue here appears in the part of the plan that is applicable only to non-commissioned employees (such as Powell). The plan contains entirely separate provisions for commissioned employees. The plan provides that for commissioned employees, “your Monthly Rate of Basic Earnings will be the average of any monthly salary or wages, plus commissions.... Average monthly earnings will be based on: (1) the 12 month period ending prior to the date you become Totally Disabled, if you have worked ... for at least 12 months; or (2) the number of calendar months you *676 worked prior to the date you became Totally Disabled, if you have worked for ... fewer than 12 months.” So, in the provision governing commissioned employees, the plan expressly specifies that an insured’s monthly earnings will be averaged over twelve months. That is exactly what Hartford would like to do in this case, but the problem with Hartford’s interpretation is that the provision governing Powell does something different. By not using that same language in the provision governing non-commissioned employees (such as Powell), the implication is that non-commissioned employee earnings will not automatically be averaged over twelve months.
Considering the relationship between the plan provisions governing commissioned and non-commissioned employees is essential if we are to give both provisions their full effect. See Aotonin Scalia & Bryan GaRner, Reading Law 167 (2012) (“A legal instrument typically contains many interrelated parts that make up the whole. The entirety of the document thus provides the context for each of its parts”). Indeed, we have employed this type of analysis in other cases involving employee benefit plans. In Blankenship v. Liberty Life Assurance Co. of Boston, 486 F.3d 620, 625 (9th Cir.2007), we construed the term “receives” to mean “possession through actual receipt of funds.” Id. We then “buttressed” our interpretation by examining the structure of the plan’s terms. Id. We observed that the plan contrasted benefits that an insured “receives” and those for which an insured was “eligible.” Id. That distinction led us to reason that because the plan reduced benefits “based on eligibility for certain types of payments,without requiring evidence that the individual received the payments or even applied for them,” ... where the [plan] requires a deduction of benefits because of funds “received,” the term is properly read to mean funds that actually come into the possession of the insured. Id.
In essence, we concluded that “receives” must mean that the insured has actual possession of funds since the plan expressly reduced benefits based on mere eligibility for other benefits. Application of the interpretative principles applied in Blankenship therefore supports interpreting “the rate in effect on your last day” to require plan providers to pay benefits based on the measurement of payment applicable on the employee’s last day of work.
I understand why Hartford uses a blanket rule of dividing all forms of compensation by twelve months. The company administers many insurance plans covering many employees with different compensation arrangements. Determining each employee’s “rate in effect on [the employee’s] last day” is undoubtedly more difficult than dividing all forms of compensation by twelve months. But Hartford’s desire for efficiency cannot overcome the need to interpret words in accordance with their plain meaning. The plan’s command that Hartford pay an insured based on “the rate in effect on [the insured’s] last day,” combined with the plan’s distinctions between commissioned and non-commissioned employees, renders Hartford’s blanket rule unreasonable. Accordingly, I would hold that Hartford abused its discretion in interpreting the plan and I therefore dissent from the majority disposition on that basis.